IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE COOK, | Civil Action |
| Plaintiff, | No. |
| v. | |
| THE CITY OF PITTSBURGH-DEPARTMENT OF PUBLIC WORKS, and TARA PINNIX, | JURY TRIAL DEMANDED |
| Defendants. | |

## CIVIL COMPLAINT

Plaintiff, Michelle Cook, by undersigned counsel, files this Civil Complaint, and in support states the following.

### I. Jurisdiction

1. Plaintiff invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Parties

2. Plaintiff, Michelle Cook, is an adult individual who resides in Allegheny County, Pennsylvania.

3. Defendant, City of Pittsburgh-Department of Public Works ("City") is a political subdivision of the Commonwealth of Pennsylvania with a principal place of business at 414 Grant Street, Pittsburgh, PA 15219.

4. Defendant, Tara Pinnix, is a Park Maintenance Manager employed by the City.

5. At all times relevant, Defendant Pinnix acted under the authority granted to her by Defendant City and by state law.

### III. Facts

**A. Flynn Parklet**

6. In the Highland Park neighborhood of Pittsburgh is a small park area referred to as the Flynn Parklet.

7. Flynn Parklet is maintained by the City of Pittsburgh and open to the public.

8. Flynn Parklet consists of a grassy area with trees, and two courts enclosed by chain link fences.

9. One gated area is used as tennis courts; the other gated area is split in two by another chain link fence: one half being a basketball court and the other half being an unmarked court.

10. The entrances to the tennis courts and the basketball court are over 100 feet from each other and located on North St. Claire Street between Bunkerhill Street and Bowden Street.

11. The unmarked court is only accessible through a gate from inside the basketball court.

12. On June 18, 2024, there were no City-issued signs on the basketball court or the unmarked court regarding prohibited use of the spaces or applicable City codes.

13. The only City issued sign at Flynn Parklet was affixed near the entrance to the tennis courts and it said: "No dogs allowed on the tennis courts."

14. Attached to the chain-link fence in the unmarked court was a handwritten sign asking dog owners to clean up after their dogs, and a dog waste bag dispenser.

15. Ms. Cook has previously taken dogs onto the unmarked court without encountering any problems with the City, its employees, or private citizens.

**B. Ms. Pinnix**

16. The City hired Ms. Pinnix as a laborer in 2003. She was promoted to foreman in

2012 then to Parks Maintenance Manager in 2018.

17. In her role as Parks Maintenance Manager, Ms. Pinnix interacts with the public on a daily basis.

18. One of the duties of a Parks Maintenance Manager is to perform levels of enforcement to ensure that Park rules, regulations and policies are followed.

19. Ms. Pinnix was instructed by her former supervisor to call 911 if she encounters a person who is unwilling to leave an area, and to call animal control if animals are involved.

20. Prior to June 18, 2024, the City never provided training to Ms. Pinnix on interacting with the public, issuing citations, deescalating conflict, or anything on how to perform her duty of enforcing Park rules, regulations and policies.

C. **First Interaction with Ms. Pinnix**

21. On June 18, 2024, Ms. Cook was working as a dog walker in the Highland Park neighborhood of Pittsburgh.

22. Ms. Cook was tasked with walking approximately twelve dogs that day.

23. Ms. Cook knew each of the dogs and none of the dogs were difficult for her to handle.

24. Ms. Cook completed a thirty-minute walk with the dogs then drove them to the Flynn Parklet.

25. Each dog had a leash attached to its collar.

26. Ms. Cook walked the twelve dogs on their leashes from her car through the basketball court and onto the unmarked court, closing the gate to the unmarked court behind her.

27. Ms. Cook played fetch with some of the dogs, while others lay quietly on the court.

28. Ms. Pinnix was working with several laborers in the grassy area of Flynn Parklet

when another City worker, Callawe Bay, pointed out Ms. Cook on the court with dogs.

29. Ms. Bay drove himself and Ms. Pinnix toward the courts, stopping on North St. Claire Street near the unmarked court.

30. Ms. Pinnix yelled at Ms. Cook from the passenger seat through the chain link fence, but Ms. Cook could not hear her.

31. After Ms. Cook approached the fence and asked Ms. Pinnix to repeat herself, Ms. Pinnix responded that Ms. Cook can't be in the court.

32. When Ms. Cook asked why she could not be in the court, Ms. Pinnix responded, "Because I said so."

33. Ms. Cook asked Ms. Pinnix to explain why she could not be on the court when people are on the court with dogs all the time, pointing to the hand-written sign and dog waste bag dispenser.

34. To the best of Ms. Cook's recollection, Ms. Pinnix responded that she didn't care and that Ms. Cook needed to take the dogs and "get the fuck out of there."

35. Ms. Cook told Ms. Pinnix that she would leave if she were provided with a valid reason.

36. In response, Ms. Pinnix threatened to call the dog warden and proceeded to get on her phone.

37. Ms. Cook went back to attending to the dogs.

38. Ms. Cook overheard Ms. Pinnix speaking to someone calling Ms. Cook a "bitch" and saying she wanted Ms. Cook to be fined, before being driven away.

39. Ms. Pinnix called animal control.

40. However, Ms. Pinnix did not wait for animal control to arrive before approaching

Ms. Cook again, as set forth below.

41. At no time did Ms. Pinnix call the police or anyone else for assistance before approaching Ms. Cook again.

### D. Second Interaction with Ms. Pinnix

42. About five minutes later, Ms. Pinnix returned to Flynn Parklet in her own City vehicle.

43. Ms. Pinnix walked onto the basketball court, leaving the gate open.

44. Ms. Pinnix appeared to be on her phone and began repeatedly calling Ms. Cook a "dyke" and saying she "wanted this dyke out of here."

45. Ms. Pinnix also referred to Ms. Cook as a "white bitch."

46. Ms. Pinnix later testified that she assumed Ms. Cook was a lesbian because she was "aggressive."

47. Ms. Cook had her back to Ms. Pinnix and tried to ignore her.

48. From the basketball court, Ms. Pinnix opened the gate to the unmarked court and enticed some of the dogs to leave.

49. A number of dogs ran through the gate to the unmarked court opened by Ms. Pinnix, out of the basketball court, and onto the street.

50. Ms. Cook ran to the gate but Ms. Pinnix held it closed from the basketball court side, confining Ms. Cook to the unmarked court.

51. Ms. Pinnix kept saying, "don't put your hands on me" but Ms. Cook did not put hands on Ms. Pinnix.

52. Ms. Cook pushed the gate to try and escape the unmarked court.

53. When she was squeezed halfway out of the gate, Ms. Pinnix grabbed Ms. Cook's

shirt, breaking Ms. Cook's necklace.

54. Ms. Pinnix then punched Ms. Cook in the face, near her eye, once or twice.

55. Ms. Cook ran to the street to gather the dogs. A number of bystanders assisted in gathering the dogs.

### E. Later Events

56. Ms. Pinnix's punch(es) to Ms. Cook's face resulted in bruising around her eye area. See Exhibit A.

57. Ms. Pinnix used such force on Ms. Cook that she injured a finger on her left hand during the altercation, resulting in an inability to bend her finger, swelling, and the need for surgery.

58. The City's workers' compensation policy covered the medical expenses associated with the injury to Ms. Pinnix's finger, finding that her altercation with Ms. Cook resulted in a work-related injury within the scope of her duties.

59. Following an investigation into a complaint by Ms. Cook about Ms. Pinnix and the June 18, 2024 incident, the Office of Municipal Investigation ("OMI") determined Ms. Pinnix violated the City's Disciplinary Manual regarding Fighting & Abusive/Offensive Language.

60. The City failed to discipline Ms. Pinnix for violating the City's policies, calling a public citizen a dyke, and punching a public citizen in the face.

61. When Ms. Pinnix's supervisor, Joe Rush, was asked why he failed to discipline Ms. Pinnix, he testified that she was doing her job, and he didn't think she should be disciplined at all.

## COUNT I
### Section 1983: Excessive Force and False Imprisonment

62. Plaintiff incorporates the allegations of the preceding paragraphs as if fully restated.

63. Defendant Pinnix, under color of state law, used excessive force on Ms. Cook, in violation of her rights under the Fourth and Fourteenth Amendments, giving rise to liability under 42 U.S.C. § 1983.

64. Defendant Pinnix, under color of law, falsely imprisoned Ms. Cook by blocking her from leaving the court, in violation of her rights under the Fourth and Fourteenth Amendments, giving rise to liability under 42 U.S.C. § 1983.

65. The rights to be free from excessive force and false imprisonment were clearly established at the time that Defendant Pinnix used force on Ms. Cook.

66. Defendant City acted with deliberate indifference to the substantial risk that its policies were inadequate to prevent violations of law by its employees, giving rise to liability under 42 U.S.C. § 1983.

67. Defendant City acted with deliberate indifference to the known or obvious consequences of failing to adequately train its employees, giving rise to liability under 42 U.S.C. § 1983.

68. Defendant Pinnix' actions were undertaken with malice or reckless indifference to Ms. Cook's federally-protected rights.

69. As a direct and proximate cause of Defendant Pinnix' use of excessive force and false imprisonment on Ms. Cook, she has suffered damages, including but not limited to physical injuries, physical pain and suffering, emotional distress, and inconvenience.

## COUNT II
### Section 1983: Denial of Equal Protection

70. Plaintiff incorporates the allegations of the preceding paragraphs as if fully restated.

71. Defendant Pinnix, under color of state law, denied Ms. Cook equal protection of the law without a rational basis, in violation of her rights under the Fourteenth Amendment, giving rise to liability under 42 U.S.C. § 1983.

72. Defendant City acted with deliberate indifference to the substantial risk that its policies were inadequate to prevent violations of law by its employees, giving rise to liability under 42 U.S.C. § 1983.

73. Defendant City acted with deliberate indifference to the known or obvious consequences of failing to adequately train its employees, giving rise to liability under 42 U.S.C. § 1983.

74. Defendant Pinnix' actions were undertaken with malice or reckless indifference to Ms. Cook's federally-protected rights.

75. As a direct and proximate cause of Defendant Pinnix' use of excessive force on Ms. Cook, she has suffered damages, including but not limited to physical injuries, physical pain and suffering, emotional distress, and inconvenience.

WHEREFORE, Plaintiff demands judgment against Defendants and requests that the Court award the following relief:

a. Compensatory damages to compensate Plaintiff for emotional distress, inconvenience, humiliation, and like injuries;

b. Punitive damages against Ms. Pinnix to punish her and to deter her and others from like conduct;

c. Reasonable attorneys' fees and costs; and

d. Such other legal and equitable relief as this Court may deem just and proper.

Respectfully submitted,

ELZER LAW FIRM, LLC

*/s/ Tamra K. Van Hausen*
Tamra Van Hausen
Pa. I.D. No. 330577
Christine T. Elzer
Pa. I.D. No. 208157
960 Penn Ave. Suite 1001
Pittsburgh, PA 15222
(412) 230-8436
tvanhausen@elzerlaw.com
celzer@elzerlaw.com

Attorneys for Plaintiff