IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHELLE COOK,<br><br>    *Plaintiff,*<br><br> v.<br><br>THE CITY OF PITTSBURGH DEPARTMENT OF PUBLIC WORKS *and* TARA PINNIX,<br><br>    *Defendants.* | Civil Action No. 2:25-cv-1749<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM ORDER**

Plaintiff Michelle Cook ("Cook") brings a two-count complaint against Defendants the City of Pittsburgh Department of Public Works ("the City") and Tara Pinnix ("Pinnix"), a park maintenance manager employed by the City (collectively, "Defendants"). (ECF No. 5). Cook alleges that Pinnix acted under color of state law to violate her rights under the Fourth and Fourteenth Amendments giving rise to liability under 42 U.S.C. § 1983. She also alleges that the City is liable under § 1983 for its failure to train its employees and the inadequacy of its policies to prevent violations of law. (*Id.*). The City filed a motion to dismiss arguing that the Court should abstain from exercising jurisdiction over this case according to the principles articulated in *Younger v. Harris*, 401 U.S. 37 (1971) and *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) because of an ongoing, related, "quasi-criminal" proceeding before the Pittsburgh Commission on Human Relations ("PCHR"). (*Id.* at ¶¶ 1, 7). Cook then filed a Motion to Deny as Moot Defendants' Motion to Dismiss. (ECF No. 21). For the reasons set forth below, the Court will deny the City's motion and grant Cook's.

1

### A. Factual Background

This case arises out of events that occurred on June 18, 2024, while Cook was working as a dog walker in the Highland Park neighborhood of Pittsburgh. (ECF No. 5, ¶ 21). She was walking twelve dogs in the Flynn Parklet, a small park maintained by the City and open to the public. (*Id.* at ¶ 6–7). The Flynn Parklet has two enclosed, gated areas. (*Id.* at ¶ 9). Of the two enclosed areas, one is a tennis court and one is a partitioned court. On the partitioned court, one half is marked for use as a basketball court, and the other half is an unmarked court. (*Id.*). The unmarked court is only accessible through the basketball court. (*Id.* at ¶ 11). On the day Cook was walking the dogs, there were no signs posted by the City that said that dogs were not permitted on the basketball court or the unmarked court. Only the tennis court had a sign stating, "No dogs allowed on the tennis courts." (*Id.* at ¶¶ 12–13). The unmarked court had a handwritten sign asking dog owners to clean up after their dogs, as well as a dispenser for dog waste bags. (*Id.* at ¶ 14). Cook previously took dogs onto the unmarked court. (*Id.* at ¶ 15).

While Cook was playing with the dogs on the unmarked court, Pinnix spotted her from the Flynn Parklet's grassy area.[1] Pinnix drove with another city employee to a street near the unmarked court and yelled to Cook that she could not be on the unmarked court with the dogs. (*Id.* at ¶ 29–31). When Cook asked Pinnix why, Pinnix responded "Because I said so." (*Id.* at ¶ 32). Cook asked for further explanation, stating that dogs are frequently on the court and pointed

---

[1] Pinnix was hired by the City as a laborer in 2003. (*Id.* at ¶ 16). She was promoted to foreman in 2012, then to parks maintenance manager in 2018. (*Id.*). Among her duties is to ensure that park rules, regulations, and policies are followed. (*Id.* at ¶¶ 17–18). Pinnix was instructed to call 911 if she encountered a person who was unwilling to leave an area, and to call animal control if animals were involved. (*Id.* at ¶ 19). Prior to June 18, 2024, the City never provided training to Pinnix on interacting with the public, issuing citations, or deescalating conflict, and it never provided her with training on how to perform her duty of enforcing park rules, regulations, and policies. (*Id.* at ¶ 20).

to the unmarked court's handwritten sign and dog waste bag dispenser. (*Id.* at ¶ 33). Pinnix responded that she did not care, stating that Cook needed to take the dogs and "get the f*** out of there." (*Id.* at ¶ 34). Cook responded that she would leave if she were provided a valid reason to do so, to which Pinnix responded with a threat to call the dog warden. (*Id.* at ¶¶ 35–36). Cook overheard Pinnix call her a "bitch" and say that she wanted her to be fined before Pinnix was driven away. (*Id.* at ¶ 38).

Thereafter, Pinnix called animal control and returned to the Flynn Parklet in her own city vehicle approximately five minutes later. (*Id.* at ¶¶ 39, 42). However, before animal control arrived, Pinnix walked on to the basketball court that adjoins the unmarked court, leaving the gate to the basketball court open. (*Id.* at ¶¶ 40, 43). Pinnix appeared to be on her telephone and referred to Cook as a "dyke" and a "white bitch," stating that she "wanted this dyke out of here." (*Id.* at ¶ 44–45). From the basketball court, Pinnix then opened the gate to the unmarked court and enticed some of the dogs to leave. (*Id.* at ¶ 48). Numerous dogs then ran through the gate between the unmarked court and the basketball court, through the basketball court's open gate, and onto the street. (*Id.* at ¶ 49). Cook then ran to the gate between the unmarked court and the basketball court but Pinnix held it closed, confining Cook to the unmarked court. (*Id.* at ¶ 50). Pinnix repeatedly said "don't put your hands on me" to Cook, but Cook did not put her hands on Pinnix. (*Id.* at ¶ 51). Cook pushed the gate to escape the unmarked court, and became "squeezed" halfway between the gate and the court. (*Id.* at ¶ 53). While Cook was in that position, Pinnix grabbed Cook's shirt, breaking her necklace, and then punched her in the face near her eye. (*Id.* at ¶¶ 53–54). Cook then ran into the street to gather the dogs. (*Id.* at ¶ 55).

Following that incident, Cook's face became bruised around her eye. (*Id.* at ¶ 56). As to Pinnix, she injured a finger on her left hand, causing swelling, the inability to bend it, and a need

for surgery. (*Id.* at ¶ 57). The City's workers' compensation policy covered the medical expenses associated with the injury to Pinnix's finger, finding that it was work-related and within the scope of her duties. (*Id.* at ¶ 58). After an investigation, the City found that Pinnix had violated its disciplinary policies regarding fighting and the use of abusive/offensive language but it did not discipline her. (*Id.* at ¶¶ 59–60).

On August 7, 2024, Cook filed a complaint with the PCHR alleging unlawful civil rights discrimination based on sexual orientation under the City's code. (ECF No. 20-1, p. 1).[2] A public hearing was held on Cook's claim on December 10 and 11, 2025. (*Id.* at 2). On March 25, 2026, the PCHR found that Cook had met her burden of proof and that she demonstrated that Defendants had discriminated against her on the basis of sexual orientation. (*Id.* at 34, 36). Cook was awarded $10,000.00 in damages for embarrassment and humiliation. (*Id.* at 34). No party filed an appeal. (ECF No. 21, p. 2).

## B. *Younger* Abstention

"[F]ederal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Thus, the general rule regarding abstention is that "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 73 (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)). While abstention is exceptional, federal courts must nevertheless abstain from exercising their jurisdiction over certain matters. Under the

---

[2] In ruling on a motion to dismiss, the Court may consider "matters of public record." *Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc.*, 730 F.3d 263, 271 (3d Cir. 2013). These include judicial proceedings, and the Court can take judicial notice of an undisputedly authentic opinion of another tribunal. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). Thus, the Court takes judicial notice of the PCHR Findings of Fact, Decision, and Order contained at ECF No. 20-1.

*Younger* abstention doctrine, these include (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) "civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions." *Altice USA, Inc. v. N.J. Bd. of Pub. Utilities*, 26 F.4th 571, 576 (3d Cir. 2022) (citing *Sprint*, 571 U.S. at 73). "A 'civil enforcement proceeding' warrants *Younger* abstention where the proceeding is 'akin to a criminal prosecution' in 'important respects.'" *Id.* (citing *Sprint*, 571 U.S. at 79).

To determine whether a civil enforcement proceeding is quasi-criminal in nature, the Court considers (1) whether the proceeding was initiated by a state in its sovereign capacity, (2) whether the proceeding sought to sanction the federal plaintiff as retribution for a violation of a legal right or duty, and (3) whether the proceeding has another striking similarity with a criminal prosecution, such as by beginning with a preliminary investigation that culminates with the filing of formal charges or by the state's ability to sanction the federal plaintiff's conduct through a criminal prosecution. *Borowski v. Kean Univ.*, 68 F.4th 844, 851 (3d Cir. 2023) (citing *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 891 (3d Cir. 2022). If those considerations demonstrate that a civil proceeding is quasi-criminal in nature, then the Court considers whether abstention is warranted under the factors set forth in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). *Id.* at 849. These additional factors include (1) whether there is an ongoing state proceeding that is judicial in nature, (2) whether that proceeding implicates important state interests, and (3) whether the state proceeding affords adequate opportunity to raise federal claims. *Id.* (citing *Middlesex*, 457 U.S. at 432).

Here, the Court cannot abstain because the underlying state proceeding is no longer pending. *See Borowski*, 68 F. 4th at 846 ("[a] prerequisite for *Younger* abstention is that the state proceeding must be ongoing"). But even if it were, the PCHR proceeding would not compel

5

abstention.  First, that proceeding was not initiated by the state in its sovereign capacity.  It was initiated by Cook who filed a complaint with the PCHR on August 7, 2024, alleging unlawful civil rights discrimination on the basis of sexual orientation against the City.  (ECF 20-1, p. 1).  Therefore, the proceeding was not brought to sanction Cook, the federal plaintiff.  Instead, she filed a complaint with the PCHR for damages against the City.  Thus, there was no "striking similarity" to a criminal prosecution, as the state party was the defendant.  Therefore, Cook's PCHR action was not quasi-criminal in nature.

Further, this federal lawsuit alleges a violation of Cook's constitutional rights under § 1983.  It does not challenge the city code violation that was adjudicated before the PCHR.  The PCHR has no authority to adjudicate federal constitutional violations.  As Cook highlights, the PCHR has the power to "[i]nitiate, receive, investigate and seek the satisfactory adjustment of complaints charging unlawful practices as set forth in this Article."  PITTSBURGH, PA., CODE § 653.05(a); (ECF No. 17, p. 8).  That "Article" is Article V of the City's code of ordinances, titled "Discrimination."  PITTSBURGH, PA., CODE art. V.  As Cook also correctly notes, the PCHR cannot award the same remedies as this Court, or a jury, could award for a violation of § 1983.  *See* § 653.05(c) ("The Human Relations Commission shall have the power and duty to … do all other things necessary and proper for the enforcement of *this Article*.") (emphasis added).

For these reasons, *Younger* abstention is inapplicable.[3]

---

[3] In Defendants' response in opposition to Cook's motion, they argue that her claims are precluded by *res judicata* and collateral estoppel. (ECF No. 26, pp. 3, 11).  These doctrines are also known as claim preclusion and issue preclusion, respectively. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405, 411–412 (2020).  Both are affirmative defenses. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).  While affirmative defenses generally must be pleaded in an answer to a complaint, preclusion may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *M&M Stone Co. v. Pa.*, 388 Fed. App'x 156, 162 (3d Cir. 2010) (citing *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972).  Because

**C. Conclusion**

AND NOW, this ⎯6⎯ day of July 2026, IT IS HEREBY ORDERED that the City's Motion to Dismiss (ECF No. 12) is DENIED and Cook's Motion to Deny as Moot Defendants' Motion to Dismiss (ECF No. 21) is GRANTED.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

---

Defendants did not make their preclusion arguments pursuant to a Rule 12(b)(6) motion, and merely raised them in a responsive brief to Cook's motion, the Court cannot consider them.